UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW PETER O'NON,

        Petitioner,

                                  Case No. 1:10-cv-533
v.                                  Hon. Robert J. Jonker

THOMAS BIRKETT,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner, Matthew O'Non, a prisoner incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### I.      Background

The Michigan Court of Appeals summarized the underlying facts of this case as follows:

> Defendant's convictions arise from the shooting deaths of Manuel Longoria and Raul Ramirez. It is undisputed that defendant owed Longoria and Ramirez more than $25,000 for a drug debt, and that he shot them on May 1, 2004, in the driveway of a rental cottage owned by defendant's parents. Defendant buried the bodies on the cottage grounds and fled to Arizona. The prosecutor argued that defendant ambushed the decedents by luring them to the cottage where he was lying in wait and shot them with an automatic rifle. Defendant contended that Longoria and Ramirez were threatening to kill him because he could not pay the drug debt, and that he shot them in self-defense after Longoria first fired at defendant.

*People v. O'Non*, No. 263626, slip op. at 1(Mich. App. Dec. 19, 2006) (docket no. 37).

Following a jury trial, petitioner was convicted of two counts of first-degree premeditated murder, M.C.L. § 750.316(1)(a). *Id.* Petitioner was sentenced to two terms of life imprisonment. *Id.*

Petitioner, through counsel, filed an appeal with the Michigan Court of Appeals,

which raised five issues:

I.      Where defense counsel was not given an adequate opportunity to
        cross-examine Louis Roman at the preliminary examination, in
        particular that counsel had not yet been served the telephone records,
        and the exam testimony was unreliable, did allowing the prosecution
        over defense objection to use Roman's examination testimony at trial
        violate the rules of evidence and [petitioner's] right of confrontation
        and was it reversible error?

II.     Did the trial judge reversibly err by denying defense counsel's
        motion for a mistrial where the prosecutor brought out during
        examination of a detective that [petitioner] was on probation and
        where the prosecutor brought out during cross-examination of
        [petitioner] that he had been in prison?

III.    Where [petitioner] was in his own residence and the two drug dealers
        showed up there to collect their debt, did the trial judge commit
        reversible error and deny [petitioner] his constitutional rights to due
        process and a fair jury trial by instructing the jury that they could find
        [petitioner] guilty of premeditated murder by "lying in wait"?

IV.     Where [petitioner] slept at his family's cottage, had a right to reside
        there, and had come out onto the porch where the shootings occurred,
        did the trial judge commit reversible error and deny [petitioner] due
        process and a fair jury trial by instructing the jury that they could find
        that the cottage was not [petitioner's] home, that he had to be "in" his
        home, and that he might have to retreat in order to have a valid self-
        defense claim?

V.      Was defense counsel ineffective and was [petitioner] denied a fair
        trial because counsel failed to object to the erroneous jury
        instructions on lying in wait and self-defense?

Brief (docket no. 37). The Michigan Court of Appeals affirmed the convictions. *O'Non*, No. 263626

(Dec. 19, 2006). Petitioner raised the same issues in an application for leave to appeal to the

Michigan Supreme Court, which that court denied because it was not persuaded that the questions

presented should be reviewed by the court. *People v. O'Non*, No. 133160 (Mich. May 30, 2007) (docket no. 38).

Petitioner filed a motion for relief from judgment in the trial court, which that court denied stating in pertinent part:

> [Petitioner] has now filed a motion to hold on abeyance and a motion for relief from judgment. In his motion for relief from judgment, [petitioner] contends that he is entitled to relief because of ineffective assistance of his trial counsel who "failed to investigate and present physical evidence, consult with and present independent experts in DNA analysis, crime scene reconstruction, forensic ballistics, and pathology" and who failed to object to the expert testimony offered by the prosecution. He further contends that his appellate counsel was ineffective because he did not raise on appeal all of the issues regarding ineffective assistance of trial counsel. In his motion to hold on abeyance, [petitioner] seeks to have the Court delay review of his motion for relief from judgment until he submits a brief in support and appendix of exhibits.

> The Court does not see any reason to delay the inevitable. [Petitioner] has not raised anything new in these latest motions. [Petitioner] again insists that he acted in self-defense. However, he simply cannot demonstrate that the alleged ineffective assistance of counsel resulted in his receiving an unfair trial or that there is a reasonable probability that he would have been acquitted if counsel had done what [petitioner] says he should have done. The evidence that was introduced at his trial overwhelmingly showed that [petitioner] planned to and gunned down his victims. Based on [petitioner's] own description of the shooting, no reasonable juror could possibly have believed that he acted in self-defense.

Order Denying Motions (May 29, 2009) (docket no. 39). The trial court also denied a motion for reconsideration. Order denying Motion for reconsideration (June 13, 2008) (docket no. 40).

Petitioner filed an application for leave to appeal to the Michigan Court of Appeals raising three issues:

> I.      [Petitioner] was denied a fair trial [where] trial counsel failed to [sic]: A) failed to investigate and prepare for a murder trial. B) Trial counsel failed to properly present objection and submit prima facie evidence to missing witness's fabrication regarding the element of intent & bias that would render prior testimony inadmissible. C) Trial counsel failed to consult with forensic experts to conduct DNA

3

testing for reconstruction. D) Motion for continuance due [sic] prosecutor's concerted surprise attack, and motion for discovery to compel creation and production of reports of experts findings an [sic] proposed testimony. E) Elicited and failed to timely object to investigators unqualified prejudicial opinion testimony. F) Failed to object to pathologist's reconstruction of shooting with gruesome details and color photographs of autopsy instead of alternative - mannequins. [G)] Failed to object to pathologist's claim that [petitioner] assassinated the victim. H) Trial counsel's errors severely and or jointly deprived [petitioner] a fair jury trial.

II.     Appellant counsel offered ineffective assistance by failing to raise trial counsel's ineffectiveness.

III.    Whether lower court abused it's [sic] discretion by denying [petitioner's] post-appeal motion to compel production of testifying pathologist's reports and denial of motion to preservation of biological evidence for DNA testing. That would require relief and or an evidentiary hearing.

Delayed application for leave to appeal (docket no. 39). The Michigan Court of Appeals denied the motion because it failed to meet the burden of establishing entitlement to relief under MCR 6.508(D). *People v. O'Non*, No. 291271 (Mich. App. July 16, 2009) (docket no. 39). Petitioner raised the same issues in his application for leave to appeal to the Michigan Supreme Court, which that court denied because he failed to meet the burden of establishing entitlement to relief under MCR 6.508(D). *People v. O'Non*, No. 139627 (Mich. March 29, 2010) (docket no. 40).

O'Non filed a habeas petition raising eight issues and numerous sub-issues:

I.     Where defense counsel was not given an adequate opportunity to cross-examine Louis Roman at the preliminary examination, in particular that counsel had not yet been served the telephone records, and the exam testimony was unreliable, did allowing the prosecution over defense objection to use Roman's examination testimony at trial violate the rules of evidence and petitioner's 6th Amendment right of confrontation and was an abuse of discretion that rendered petitioner's trial fundamentally unfair.

II.    The trial judge abused his discretion by denying defense counsel's motions for a mistrial where the prosecutor committed misconduct by bringing out, during the examination of a detective, that petitioner was on probation and where the prosecutor brought out, during cross-examination of petitioner, that he had been in prison, resulting in the loss of petitioner's due process right to a fair trial.

III.    Where petitioner was in his own residence and the two drug dealers showed up there to collect their debt, the trial court abused its discretion and denied petitioner his constitutional rights to due process and a fair jury trial by instructing the jury that they could find petitioner guilty of premeditated murder by "lying in wait."

IV.    Where petitioner slept at his family's cottage, had a right to reside there, and had come out onto the porch where the shootings occurred, the trial court abused its discretion, and denied petitioner's due process right to a fair trial, by instructing the jury that they could find that the cottage was not petitioner's home, that he had to be "in" his home, and that he might have to retreat in order to have a valid claim of self-defense.

V.    Defense counsel was ineffective and denied petitioner a fair trial due to counsel's failure to object to the erroneous jury instructions on lying in wait and self-defense.

VI.    [Petitioner] was denied his constitutional right to a fair trial where ineffective trial counsel's cumulative errors resulted in his performance falling far below an objective standard of reasonableness.

    A.    Trial counsel failed to investigate and prepare for a murder trial.

    B.    Trial counsel failed to properly present an objection and submit prima facie evidence to missing witness's fabrication regarding the element of intent and bias that would render prior testimony inadmissible.

    C.    Trial counsel failed to consult with forensic experts to conduct DNA testing for reconstruction.

    D.    Trial counsel failed to motion for a continuance due to prosecutor's concerted surprise attack, and motion

for discovery to compel creation and production of reports of experts findings and proposed testimony.

E.    Trial counsel elicited and failed to timely object to investigators unqualified prejudicial opinion testimony.

F.    Trial counsel failed to object to pathologist's reconstruction of shooting with gruesome details and color photographs of autopsy instead of alternative - mannequin's B) [sic] failed to object to pathologist's claim that [petitioner] had assassinated the victim.

G.    Trial counsel's errors severly [sic] and or jointly deprived [petitioner] of a fair jury trial.

VII.    Petitioner was denied his right to effective assistance of appellate counsel where appellate counsel failed to raise all instance's of trial counsel's ineffectiveness that could have resulted in [petitioner] receiving a new trial.

VIII.    The lower court abused it's discretion by denying petitioner's post-appeal motion to compel production of testifying pathologist's reports and denial of motion for preservation of biological evidence for DNA testing, resulting in [petitioner] being denied crucial evidence needed to refute the prosecution's theory of [petitioner] "lying in wait", the key element used in obtaining the first degree murder convictions, during post conviction pleadings.

Petition (docket no. 1); Petitioner's Memorandum (docket no. 2).[1]

---

[1] The Court notes that petitioner's reply to respondent's answer (docket no. 13), presented a number of issues which were not raised in the state court proceedings or his habeas petition, including, but not limited to the following: the government produced fraudulent evidence; the government committed a fraud upon the court; the government relied on perjured testimony; violations of the *Brady* rule; petitioner "did not have malice to commit an intentional act of doing wrongful action without just cause or excuse"; petitioner acted in self-defense; the prosecutor engaged in a grossly improper closing argument; the trial judge refused to instruct the jury on the defense of others; the trial court erred in excluding evidence of the violent character of the victim; and, petitioner was not obligated to retreat. While the Court has considered petitioner's reply to the extent it addressed the issues raised in the habeas petition, it will not address new claims which petitioner raised for the first time in his reply.

## II.    Procedural default

Respondent contends that petitioner's Issues III and IV are procedurally defaulted.[2] The record reflects that the Michigan Court of Appeals engaged in a limited plain error review of those issues:

> Defendant next argues that the trial court improperly instructed the jury on a lying-in-wait theory of first-degree murder and erroneously instructed the jury regarding the at-home exception to the duty to retreat rule for self-defense. Because defendant did not object to these instructions at trial, we review these issues for plain error affecting defendant's substantial rights.

*O'Non*, No. 263626, slip op. at pp. 3-4.

Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural rule will warrant application of the procedural default doctrine. Only a state procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine. "For a habeas claim

---

[2] The Court notes that while petitioner first raised Issues VI, VII and VIII in his motion for relief from judgment pursuant to MCR 6.500 *et seq.*, the trial judge summarily denied the motion on the merits without finding that the issues were defaulted under MCR 6.508(D)(3). The state appellate courts summarily denied the motion pursuant to "MCR 6.508(D)." Given this record, the Court will treat those issues as denied on the merits. *See Guilmette v. Howes*, 624 F.3d 286, 288 (6th Cir. 2010) (*en banc*) (holding that brief orders which cite only MCR 6.508(D) "are not explained orders invoking a procedural bar").

to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court mus also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

The procedurally defaulted claims in Issues III and IV were subject to plain error review due to petitioner's failure to object and preserve these issues for appellate review. Petitioner's failure to comply with the state's contemporaneous-objection rule resulted in a procedural default of these issues for purposes of federal habeas review. *See, e.g., Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009); *Ege v. Yukins*, 485 F.3d 364, 378 (6th Cir. 2007). The state court's plain error analysis did not save petitioner from the procedural default of these issues. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006). "Plain error analysis is more properly viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits." *Id. See also, Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989) (limited review of an issue to prevent manifest injustice does not constitute a waiver of the procedural default). Accordingly, Issues III and IV are procedurally defaulted.

### B.    Cause and Prejudice

Habeas review of a procedurally defaulted claim is precluded unless petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. "[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Here, petitioner has alleged the ineffective assistance of counsel as both an independent claim (Issue V)

and as cause for his procedural default.   As discussed in § IV.C.2., *infra*, petitioner's claim of ineffective assistance of counsel with respect to these jury instructions fails.  Accordingly, petitioner has failed to demonstrate cause for his procedural default.

### C.    Fundamental miscarriage of justice

Petitioner's failure to demonstrate cause prevents federal review of his habeas claims unless the court's failure to do so will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.   In *Schlup v. Delo*, 513 U.S. 298 (1995), the Supreme Court described the scope of the fundamental miscarriage of justice exception:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

*Schlup*, 513 U.S. at 321.  To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. at 329.  In the procedural default context, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998).  "To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324.  Here, petitioner has not presented any new evidence that he was actually innocent of the crime.  Having failed to meet this exception, petitioner's Issue III and IV are procedurally barred and not subject to habeas review.

### III. Standard of review under 28 U.S.C. § 2254

Where the state court has adjudicated a claim on its merits, the federal district court's

habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court of the
> United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings,

and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S.

776, 130 S. Ct. 1855, 1862 (2010) (internal quotation marks and citations omitted). "Under the

'contrary to' clause, a federal habeas court may grant the writ only if the state court arrived at a

conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court

decided the case differently than the Supreme Court has on a set of materially indistinguishable

facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S.

362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal court may grant the writ

only if the state court identified the correct governing legal principle from the Supreme Court's

decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id.* A court

may not issue a writ of habeas corpus "simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established federal law erroneously

or incorrectly." *Williams*, 529 U.S. at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409.

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001). The presumption of correctness accorded to a state court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

## IV. Discussion

### A. Cross-examination of Louis Roman (Issue I)

Petitioner contends that defense counsel was not given an opportunity to cross examine a witness, Louis Roman, at petitioner's preliminary examination. At trial, the prosecution, over counsel's objection, entered a transcript of Roman's testimony into evidence. Petitioner contends that allowing this testimony violated the rules of evidence and his right to confront the witness. Petitioner's Brief (docket no. 2-2 at pp. 25-30). The Michigan Court of Appeals addressed the issue as follows:

> Defendant first argues that the trial court erred in permitting the prosecutor to introduce Jorge Luis Roman's preliminary examination testimony into evidence at defendant's trial after Roman exercised his Fifth Amendment right not to testify.
>
> `We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v. Manser*, 250 Mich.App 21, 31; 645 NW2d 65 (2002). The trial court admitted Roman's preliminary examination testimony under MRE 804(b)(1), which provides that an unavailable declarant's prior testimony is not excluded by the hearsay rule "if the party against whom the testimony is now offered. . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Hearsay testimony may not be admitted under MRE 804(b)(1) if it would violate the defendant's constitutional right to confront witnesses. [FN1]

In *People v. Meredith*, 459 Mich. 62, 66, 67-71; 586 NW2d 538 (1998), our Supreme Court held that MRE 804(b)(1) is a firmly rooted hearsay exception and, therefore, the Confrontation Clause is satisfied when prior testimony is properly admitted under this rule. *See also People v. Adams*, 233 Mich.App 652, 659-660; 592 NW2d 794 (1999). Recently, the United States Supreme Court clarified these principles in *Crawford v. Washington*, 541 U.S. 36; 124 S Ct 1354; 158 L.Ed.2d 177 (2004). The Court held that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.* at 68-69. The Confrontation Clause "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Id.* at 61.

In this case, defendant argues that he did not have the opportunity to adequately cross-examine Roman because he was not able to examine telephone records before the preliminary examination. Defendant maintains that the telephone records would have revealed that Roman was a friend of the Longoria family and heavily involved in drug trafficking with them.

Defendant does not explicitly explain why the telephone records and information about Roman's contacts with the Longoria family were essential to an effective cross-examination. He presumably would have used this evidence to show that Roman's connections to Longoria and his family made him a biased witness. But the Confrontation Clause guarantees, "only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defendant might wish.' " *People v. Chavies*, 234 Mich. App 274, 283; 593 NW2d 655 (1999), overruled on other grounds in *People v. Williams*, 475 Mich. 245; 716 NW2d 208 (2006), quoting *United States v. Owens*, 484 U.S. 554, 559; 108 S Ct 838; 98 L.Ed.2d 951 (1988). Cross-examination "is sufficient" if "the defendant has the opportunity to bring out such matters as the witness' bias. . . . " *Id.*

Here, we are not convinced that defendant did not have the opportunity to pursue the issue of Roman's possible bias as a witness in his cross-examination of Roman at the preliminary examination. Defendant was aware that Roman was also involved in trafficking drugs and was aware that Roman had met with Longoria and Ramirez before they were killed. Defendant was not restricted in his cross-examination of Roman at the preliminary examination and, even without the telephone records, defendant had the opportunity to explore Roman's relationship with Longoria to show Roman's possible bias. Moreover, the telephone records would only have revealed that calls were placed or received, not the substance of any calls. Because defendant had a prior opportunity and similar motive to develop Roman's testimony through cross-examination at the preliminary examination, the admission of Roman's testimony at defendant's trial did not violate defendant's rights under the Confrontation Clause. The trial court did not abuse its discretion in allowing this evidence at defendant's trial.

[FN1. US Const, Am VI; Const 1963, art 1, § 20.]

*O'Non*, No. 263626, slip op. at pp. 1-2.

The Sixth Amendment's Confrontation Clause is not violated when a court admits the prior testimony of an unavailable witness and the opposing party had an opportunity to cross-examine that witness. *See Crawford*, 541 U.S. at 53-56. The opportunity to cross-examine a witness includes a cross-examination performed at a preliminary examination. *See California v. Green*, 399 U.S. 149, 165-66 (1970) (where the criminal defendant had an opportunity to cross-examine a trial witness at a preliminary hearing, the witness' statements were admissible at trial in the witness' absence); *Al-Timimi v. Jackson*, 379 Fed. Appx. 435, 437-40 (6th Cir. 2010) (admission of testimony by a murder victim's girlfriend, given at a preliminary examination, did not violate the defendant's rights under the Confrontation Clause, where "the petitioner was represented by counsel, who was afforded a full opportunity to cross-examine the prosecution's witnesses, without any apparent restriction by the presiding judge, and availed himself of this opportunity to the extent he saw fit").

Here, Roman gave extensive testimony at the preliminary examination, and testified that he knew both petitioner and Longoria, that petitioner bought marijuana from Longoria, and that petitioner told Roman that he had robbed Longoria of 20 pounds of marijuana. Prel. Exam. Trans. at pp. 189-200 (Sept. 23, 2004) (docket no. 19). Petitioner's counsel was able to cross-examine Roman during the preliminary examination. *Id.* at pp. 200-02. Roman was unavailable at trial because he invoked his Fifth Amendment right to remain silent. Trial Trans. II at pp. 278-84; Trial Trans. III at pp. 3-7.[3] Under these circumstances, where petitioner's counsel had the unfettered

---

[3]The trial transcripts in the state court case were identified by both Arabic and Roman numerals. The transcripts will be referred to as follows: Trial Trans. I (March 1, 2005) (docket no. 25); Trial Trans. II (March 2, 2005) (docket no. 26); Trial Trans. III (March 3, 2005) (docket no. 27); Trial Trans. 4 (March 8, 2005) (pages 1-122) (docket no. 28); Trial Trans 4-B (March 8, 2005) (pages 123-264) (docket no. 29); Trial Trans. 5 (March 9, 2005) (docket no. 30); Trial Trans. 6 (March 10, 2005) (pages 1-154) (docket no. 31);

opportunity to cross-examine Roman at the preliminary examination, the introduction of that

testimony at trial did not violate petitioner's rights under the Confrontation Clause. *See Crawford*,

541 U.S. at 53-56; *Green*, 399 U.S. at 165-66; *Al-Timimi*, 379 Fed. Appx. at 437-40.

The Michigan Court of Appeals' decision was neither contrary to, nor an

unreasonable application of, clearly established Federal law as determined by the Supreme Court;

nor was the decision based on an unreasonable determination of the facts in light of the evidence

presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.

### B.      Motion for Mistrial  (Issue II)

Petitioner contends that the trial judge abused his discretion in denying defense

counsel's motion for a mistrial, when the prosecution elicited evidence at trial that petitioner had

been on probation and had been in prison. Petitioner's Brief (docket no. 2-2 at pp. 31-33). The

Michigan Court of Appeals addressed the issue as follows:

> Defendant next argues that the trial court erred by denying his motions for
> a mistrial. Defendant initially moved for a mistrial after Officer Simpson referred
> to the fact that defendant was charged with a probation violation when he was
> arrested for the charged murders. Defendant later moved for a mistrial after the
> prosecutor's cross-examination of defendant elicited that defendant had a DNA
> record, implying that defendant had a prison record.
>
> This Court reviews a trial court's denial of a mistrial for an abuse of
> discretion. *People v. Alter*, 255 Mich.App 194, 205; 659 NW2d 667 (2003). A
> mistrial should be granted only where an irregularity is prejudicial to the rights of the
> defendant and impairs his ability to get a fair trial. *Id.*
>
> Officer's [sic] Simpson's reference to defendant's probationary status was
> given as part of a nonresponsive answer to an otherwise proper question. An
> unresponsive, volunteered answer to a proper question is generally not grounds for
> a mistrial. *People v. Griffin*, 235 Mich.App 27, 35-36; 597 NW2d 176 (1999);
> *People v. Hackney*, 183 Mich.App 516, 531; 455 NW2d 358 (1990). Here, the

---

Trial Trans. 6-B (March 10, 2005) (pages 155-282) (docket no. 32);  Trial Trans. IV (March 15, 2005)
(docket no. 33); and, Trial Trans. V (March 16, 2005) (docket no. 34).

14

reference was fleeting and the prosecutor did not pursue the subject. More significantly, defense counsel acknowledged in his opening statement that defendant had a prior criminal history, and defendant admitted extensive involvement in drug trafficking. Defendant admitted in his direct examination testimony that he purchased large quantities of marijuana, and sometimes cocaine, and sold the drugs to distributors throughout the state. He also admitted that he began selling marijuana when he was 13 years old, and that he also sold cocaine, "acid," and hallucinogenic mushrooms. Additionally, he admitted that he broke into a school.

Neither the prosecutor's cross-examination of defendant about his DNA record nor the earlier probation reference indicated that defendant committed any offense in addition to those already referenced. Under the circumstances, the fleeting reference to defendant's probationary status and the vague inquiry about defendant having a DNA record were not so prejudicial that they impaired defendant's ability to receive a fair trial. Accordingly, the trial court did not abuse its discretion in denying defendant's motions for a mistrial.

*O'Non*, No. 263626, slip op. at p. 3.

Petitioner is not entitled to federal habeas relief for the trial court's alleged violation of state law in denying his motion for a mistrial. Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Petitioner cannot seek federal habeas relief based upon his disagreement with the state appellate court's construction of state law. *See Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("[a] federal court may not issue a writ on the basis of a perceived error of state law"). The United States Supreme Court "repeatedly has held that the state courts are the ultimate expositors of state law" in federal habeas proceedings. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). *See Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001) ("[b]ecause state courts are the final authority on state law, federal courts must accept a state court's interpretation of its statutes and

its rules of practice") (internal citation omitted). Accordingly, petitioner's claim regarding the trial court's denial of a motion for a mistrial should be denied.[4]

## C. Ineffective assistance of trial counsel (Issues V and VI)

Petitioner lists a number of instances which he contends were acts of ineffective assistance of counsel. Petitioner's Brief (docket no. 2-2 at pp. 40-42); Petitioner's Brief ("Appendix B") (docket no. 2-3).[5]

### 1. Legal standard for ineffective assistance of counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687. In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. "[T]he threshold issue is not whether [petitioner's] attorney was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from

---

[4] Petitioner has framed this habeas issue to suggest that he seeks relief based upon prosecutorial misconduct and a denial of due process. However, petitioner presented this issue in the state courts as a state law issue, claiming that the trial judge erred when he did not grant a mistrial. While petitioner's state appellate brief included the sentence "Mr. O'Non was denied a fair and impartial trial" and cited "US Cont. Ams. V, VI, XIV," his cryptic reference to an unspecified federal constitutional violation was insufficient to raise a federal claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) ("[g]eneral allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present' claims that specific constitutional rights were violated").

[5] Petitioner's "Appendix B," which is identified as docket no. 2-2, does not appear as an electronically filed document. Rather, it is attached to the petition in a bound packet of paper documents in the file marked as docket no. 1.

the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis in original), *cert. denied* 508 U.S. 975 (1993). Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690.

### 2. Trial counsel's failure to object to certain jury instructions (Issue V)

Petitioner raised Issue V in his direct appeal, claiming that his counsel was ineffective for failing to object to two jury instructions. Petitioner's independent habeas claims regarding those jury instructions are barred due to his procedural default. *See* discussion in § II, *supra*. However, it is necessary to briefly address the propriety of the jury instructions to resolve petitioner's claim that his trial counsel was ineffective for failing to object to those instructions. The Michigan Court of Appeals framed petitioner's claim with respect to the jury instructions as follows, "[d]efendant next argues that the trial court improperly instructed the jury on a lying-in-wait theory of first-degree murder and erroneously instructed the jury regarding the at-home exception to the duty to retreat rule for self-defense." *O'Non*, No. 263626, slip op. at p. 3.

The elements of first-degree, premeditated murder under M.C.L. § 750.316(1)(a) are "[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing" *Id.* The theory of first-degree murder in this case was that petitioner committed the murder by "lying in wait," which, according to the trial judge, meant that "the defendant hid himself, planning to take another person by surprise." *Id.* at pp. 3-4. The Michigan Court of Appeals found that this instruction was proper under the circumstances of this case:

> Defendant argues that this instruction was improper because the cottage where the victims were killed was his home. Even if the cottage was defendant's home, however, that did not preclude a lying-in-wait instruction. The prosecution

17

presented evidence that defendant deliberately lured the victims to the cottage location, that he was waiting for them when they arrived, that he used an AK-47 semi-automatic rifle to shoot both victims while they were still in their car, and that he then buried their bodies in a secluded area on the property. Accordingly, the instruction was supported by the evidence and did not constitute plain error.

*Id.* at p. 4.

The other instruction involved the duty-to-retreat rule when claiming self-defense. The Michigan Court of Appeals summarized petitioner's claim as follows, "[d]efendant also argues that the trial court gave a misleading instruction with respect to the at-home exception to the duty-to-retreat rule in self-defense." *Id.* The trial court's instruction addressed the "at-home" exception as follows:

If you find that the O'non [sic] cottage was the defendant's home, then I instruct you that if a person assaulted the defendant in the defendant's own home, the defendant did not have to try to retreat or get away. Under those circumstances, the defendant could stand his ground and resist the attack with as much force as he honestly and reasonably believed necessary at the time to protect himself.

*Id.* The Michigan Court of Appeals found that this jury instruction was proper, observing that it was a factual issue as to whether the cottage was petitioner's home for purposes of this exception:

On appeal, defendant correctly observes that a porch is part of a home for purposes of applying the no-retreat rule. *People v. Canales*, 243 Mich.App 571, 576-577; 624 NW2d 439 (2000). But the trial court's instruction did not suggest otherwise. Rather, there was a factual dispute at trial concerning whether the cottage where the victims were killed was defendant's home, and whether the victims first assaulted defendant. The cottage was owned by defendant's parents and was rented out to tourists. Defendant was permitted to stay there on occasion when it was not being used. The trial court properly instructed the jury that, if it found that the cottage was defendant's home, and that defendant was assaulted while on the premises, defendant did not have a duty to retreat before acting in self-defense. We believe that the instruction accurately conveyed the applicable law as applied to the facts of this case [.]

*Id.*

After establishing that the jury instructions were proper, the Michigan Court of Appeals found that petitioner's counsel was not ineffective for failing to object to these instructions:

> Defendant also argues that defense counsel was ineffective for failing to object to the foregoing jury instructions. In light of our conclusion that defendant has not established any instructional error, however, there is no basis for concluding that counsel was ineffective for failing to object to the instructions. *People v. Carbin*, 463 Mich. 590, 599-600; 623 NW2d 884 (2001). Counsel is not required to make a futile objection. *People v. Thomas*, 260 Mich.App 450, 457; 678 NW2d 631 (2004).

*Id.* at p. 5.

The Michigan Court of Appeals determined that the jury instructions were proper under state law. Petitioner cannot contest the Michigan courts' interpretation of state law in this federal habeas action. *See Mullaney*, 421 U.S. at 691; *Israfil*, 276 F.3d at 771. Because the jury instructions were proper, any objection to these instructions would have been without merit. As the Michigan Court of Appeals observed, counsel cannot be ineffective for failing to raise meritless or futile objections. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial"); *United States v. Sanders*, 165 F.3d 248, 253 (3rd Cir. 1999) ("[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument"); *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("[c]ounsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel"); *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993) ("[t]he Sixth Amendment does not require counsel . . . to press meritless issues before a court").

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.

### 3. Petitioner's other claims of ineffective assistance (Issue VI)

Petitioner raised a number of claims for ineffective assistance of counsel in his motion for relief from judgment. These claims, which were summarily denied by the state courts, are addressed below.

### a. Counsel's failure to investigate and prepare for a murder trial.

Petitioner's claim that counsel failed to investigate and prepare for trial is without merit. The record reflects that petitioner's counsel actively participated in the preliminary examination, filed at least 14 pre-trial motions, and responded to the government's pre-trial motions. *See* Leelanau Cir. Ct. Case Docket (docket no. 16). Counsel also moved for a mistrial and, based upon a review of the trial court transcripts, had command of the facts in this case. Counsel also obtained testimony from an expert in ballistics to support petitioner's claim of self-defense and met with the government's pathologist, Dr. Cohle, at which time the doctor answered counsel's questions. Trial Trans. 6 at pp. 80-152; Trial Trans. 4B at p. 158. In addition, during the trial, petitioner told the trial judge that he was satisfied with his trial counsel:

| THE COURT: | . . . Mr. O'Non, I want to cover one point with you. Throughout the trial you appear to be working well with Mr. Elhart, you appear to be consulting and writing notes to each other. Are you satisfied with the way your attorney is representing you to this point? |
|---|---|
| [PETITIONER]: | Yes, Sir. |
| THE COURT: | Don't have any concerns? |
| [PETITIONER]: | No. |

Trial Trans. 4-B at p. 262.

The record does not support petitioner's claim that his counsel deficient because he failed to investigate petitioner's case or that he was unprepared for the murder trial. Accordingly, petitioner's claim should be denied.

        **b.    Trial counsel failed to properly present an objection with respect to Roman's testimony regarding the element of intent and bias that would render prior testimony inadmissible.**

Petitioner alleges his attorney failed to object to the testimony by Louis Roman, regarding the element of intent, and Roman's bias. Contrary to petitioner's claim, his counsel did object to the admission of Roman's testimony for the reasons advanced by petitioner. Counsel filed a motion to exclude the evidence and argued that Roman was testifying falsely about petitioner's statements, because videotapes showed petitioner purchasing the two tarps, the rope and the ammunition after the time that Roman claimed he spoke with petitioner. Trial Trans. II at pp. 132-49. In addition, petitioner's counsel brought out Roman's potential bias in the case, pointed out that Roman was heavily involved in drug trafficking, was a friend of Longoria, and had moved "a large amount of drugs for the Longoria family." *Id.* at p. 143. In ruling on the motion, the trial judge noted, among other things, the timing inconsistency in Roman's testimony and that Roman "may be heavily involved in the world of drugs," but ultimately allowed the testimony, finding "satisfactory indicia of reliability to allow the preliminary examination testimony of Mr. Jorge Louis Roman to be utilized." *Id.* at pp. 152-60. The record does not support petitioner's claim that his counsel deficient because he failed to object to the admission of Roman's preliminary examination testimony. This claim should be denied.

### c. Trial counsel failed to consult with forensic experts to conduct DNA testing for reconstruction.

Petitioner provides no support for his argument that counsel failed to consult with forensic experts to conduct DNA testing. This Court addressed the record with respect to the DNA evidence when it ruled on petitioner's motion for discovery in the present habeas action:

Petitioner has presented an affidavit from his trial counsel which explains why counsel did not address DNA testing prior to trial:

The bone fragments inside the motor vehicle of the O'Non homicide investigation were never tested for two reasons: (a) There was never any question whose bone fragments they were, as they were those of the decedents and (b) the parents of Matthew Peter O'Non had limited funds and we had to place those funds were [sic] they were rightly due. Months prior to trial, Mr. O'Non's parents ran out of money and I tried the case without them having the funds to proceed. When the case was ended, they owed in excess of $70,000.00.

Affidavit of Craig W. Elhart at ¶ 3 (May 10, 2012) (docket no. 50-1).

Counsel's position is supported by the evidence of the pathologist, Dr. Cohle, who was able to identify the victims based upon the autopsy results and his review of the crime scene. At trial, Dr. Cohle testified at trial that Ramirez was shot twice (one bullet severed his spinal cord while the other entered his heart), sustained a "massive area of skull fracture" which required "a tremendous amount of force" (consistent with being hit by a cinder block), was stabbed in the face, and sustained a lacerated liver caused by blunt force trauma consistent with being "stomped" or struck with a very hard object. Trial Trans. (March 8, 2005) at pp. 169-71, 174-80, 180-82, 181 (docket no. 29). The pathologist testified that x-rays of Remirez's head revealed no bullets or bullet fragments. *Id.* at p. 179. The pathologist (Dr. Cohle) testified that the bullet injuries were consistent with Ramirez sitting in the passenger side of the car, given the bullet hole in the passenger seat. *Id.* at pp. 185-86, 189, 241). The doctor also testified that Ramirez's head and liver injuries occurred outside of the car (AR 184, 190).

Dr. Cohle testified that Longoria was shot in the left lower jaw with the bullet passing through the upper jaw, which resulted his teeth being blown out. *Id.* at pp. 193-94. One of Longoria's teeth was found in the car's cup holder. *Id.* at pp. 195, 211-12. Longoria was also shot from the side into his right armpit, a wound which was inconsistent with someone pointing a gun, given that Longoria's arm was at his side. *Id.* at pp. 195-96, 212. This bullet traveled through Longoria's chest, liver, and

heart, exiting through the back of his left armpit. *Id.* at pp. 197-200, 237. Finally, Longoria was shot in the back of the head with the bullet exiting through the face and nose area. *Id.* at pp. 200-05, 251. Dr. Cohle confirmed that the matter (fragments) taken from the passenger side door's vinyl was bone. *Id.* at 230-31. Dr. Cohle opined that the blood and brain tissue, as well as the imbedded bone fragments, were explained by Longoria's head wound. *Id.* at pp. 211, 242. Demonstrating with mannequins representing Longoria in the driver's side and Ramirez in the passenger side, Dr. Cohle explained that the wounds were consistent with them being shot in these positions. *Id.* at pp. 206, 215-16, 228, 257, 259-60, 206-7, 208-10, 229. Dr. Cohle testified that Longoria being shot in the car explained the skull fragments being embedded in the passenger side door. *Id.* at pp. 250, 259-60.

Another witness, Kristin Drow, petitioner's girlfriend at the time, testified regarding petitioner's execution of his plan to kill the victims. At some point in time, Drow learned about petitioner's dealings with Longoria and Ramirez. Trial Trans. (March 15, 2005) at pp. 207-09 (docket no. 33). Petitioner told Drow that he had a friend who had not paid Longoria and Ramirez, and that his plan was to kill them without getting caught. *Id.* at pp. 209-10. Petitioner bought an AK-47 from his friend Eric. *Id.* at p. 212. He also bought ammunition, tarps and ropes. *Id.* at p. 212. On the evening of April 30, 2004, petitioner spoke on the telephone giving someone directions to the cottage where they were staying. *Id.* at pp. 214-15. Petitioner was wearing black cargo pants, a polo, a coat and boots. *Id.* at p. 215. She told him "not to do it," and he told her to "shut up, go back in the bedroom and wait." *Id.* She saw the gun on the couch. *Id.* After Drow returned to the bedroom, she heard the cottage door opening and closing. *Id.* at p. 216. About five or ten minutes later, she heard a car pull up. *Id.* She heard a male voice say "no don't" and heard shots. *Id.* Drow did not recognize the voice, but she knew it was not petitioner's. *Id.* at pp. 250-51. While Drow heard were multiple shots, there were no shots "that sounded different from any other shots." *Id.* at p. 216. When Drow looked outside of the front window, she saw petitioner "pulling the older gentleman with glasses out of the front side of the car." *Id.* at p. 217.

Plaintiff has not demonstrated good cause for discovery. Dr. Cohle's testimony established that the human material found inside the car belonged to the two victims (e.g., Longoria's tooth in the car's cup holder). Even if this factual evidence was amplified by identifying the DNA in the car, such evidence would not aid petitioner or demonstrate that petitioner is entitled to relief on his claim of ineffective assistance of counsel. As counsel points out, there was never any question as to whose bone fragments were in the car, and this would only be reinforced with the use of DNA testing. *See, generally, Grayson v. King*, 460 F.3d 1328, 1342-43 (11th Cir. 2006) (noting "the unparalleled accuracy and surpassing importance of DNA testing in identifying and/or excluding suspects of violent crime"). Of course, the absence of DNA of the victims would not be conclusive that the victims were not in a car, only that samples of their DNA had not been preserved.

Here, petitioner expects too much of DNA evidence, which he seeks to use for purposes far beyond the limit of identifying the victims.

Moreover, even if the court were to conclude that trial counsel was deficient by failing to obtain a DNA expert, petitioner suffered no prejudice under *Strickland*. As the trial judge observed, the overwhelming evidence at trial established that plaintiff planned to – and did – gun down the two victims, whose identities were never in question. Accordingly, petitioner's motion for discovery (docket no. 48) is **DENIED**.

Order (docket no 53).

For these same reasons, the Court concludes that petitioner's counsel was not deficient in failing to perform DNA testing in this case and that, in any event, counsel's failure to obtain DNA testing did not prejudice petitioner. Accordingly, petitioner's claim should be denied.

### d.      Trial counsel failed to move for a continuance

Petitioner contends that his counsel should have requested an adjournment of the trial because during counsel's cross-examination of  Dr. Cohle, the doctor confirmed that the material taken from the passenger side door area was bone. Trial Trans. 4-B at pp. 230-31. The record reflects, however, that petitioner's trial counsel was aware that the bone fragments had been removed and sent for testing, and in fact moved to adjourn the trial back in February 2005. *See* Motion Trans. (Feb. 17, 2005) at pp. 4-12 (discussion regarding possible adjournment) (docket no. 23); Leelanau County Cir. Ct. Case Docket ("Defendant's Emergency motion for adjournment") (Feb. 18, 2005). Petitioner's claim of deficient performance is not supported by the record because counsel attempted to obtain an adjournment related to the bone material found in the victims' car. Petitioner's claim should be denied.

### e. Trial counsel elicited and failed to timely object to an investigator's unqualified prejudicial opinion testimony.

Petitioner contends that counsel was ineffective for failing to object to three government experts. First, petitioner contends that counsel was ineffective for allowing the trial court to qualify Michigan State Police Officer Lucey as an expert. Officer Lucey testified that he was a forensic scientist with the Michigan State Police involved in crime scene investigation. Trial Trans. 4 at pp. 7-9. Petitioner's counsel did not object to Officer Lucey testifying as an expert witness. *Id.* at p. 9. Petitioner contends that the trial court did not exercise its discretion to qualify Officer Lucey in specific areas of expertise and that his counsel was unprepared to confront Lucey. While petitioner apparently disagrees with some of Lucey's testimony, petitioner does not argue that Lucey was unqualified to act as an expert. Rather, the gist of petitioner's argument appears to be that Lucey testified beyond the scope of his expertise. The record reflects that Lucey offered an opinion that the bone fragments found embedded in the vinyl portion of the car door "would have been placed there by a high velocity impact. And most likely high velocity impacts originate from gunshot wounds." *Id.* at p. 40. On cross-examination, petitioner's counsel explored the nature of Lucey's duties as a forensic scientist and pointed out that Lucey's limited role in the investigation, as part of a collaborative effort with another forensic scientist (Patchin), a firearms expert (Hickman) and the pathologist (Dr. Cohle). *Id.* at pp. 46-48. Counsel's questioning of Lucey demonstrated Lucey's limited role in the crime scene investigation. *Id.* at pp. 45-65, 67-85. Based on this record, it does not appear to the Court that counsel was deficient in addressing Officer Lucey's qualifications as an expert or his opinions. Even if counsel's failure to object to Lucey as an expert could be characterized as deficient, petitioner was not prejudiced due to his counsel's extensive cross-examination of Lucey.

Second, petitioner claims that counsel was ineffective in addressing the opinions of Jennifer Patchin, a forensic scientist with the Michigan State Police Forensic Laboratory who was involved in crime scene investigation. Ms. Patchin testified that her role in this case was to examine the victims' care for hair and fiber evidence. Trial Trans. 4 at p. 100. She also testified that fiber from a sweatshirt and hat bill were found on the passenger side seat of the car, which were carried there via a projectile (a bullet), and which were consistent with Ramirez's sweatshirt. *Id.* at pp. 108-10. Ms. Patchin also testified that in her opinion, the fiber evidence from the articles of clothing associated with Ramirez would be consistent with him having been in the passenger seat of the car at the time he was shot. *Id.* at pp. 115-16. The record reflects that petitioner's counsel engaged Ms. Patchin in an extensive cross-examination in which he questioned her conclusions in detail. Trial Trans. 4-B at pp. 124-54. Based on this record, it does not appear to the Court that counsel was deficient in addressing either Ms. Patchin's qualifications as an expert or her opinions. Even if counsel failured to object to Ms. Patchin's status as an expert, petitioner was not prejudiced due to his counsel's extensive cross-examination of Patchin.

Third, petitioner contends that the testimony of the pathologist, Dr. Cohle, was based on speculation. The Court disagrees. The record reflects that Dr. Cohle testified consistent with his medical training. For example, the doctor relied on his medical opinion to identify the bone fragments in the car as belonging to Longoria:

Q.   Do you have an opinion as to how the bone fragments became embedded in that door panel?

A.   Most likely explanation would be that they would arise from Mr. Longoria being shot in the back of the head with the exit, and there was a large gaping exit, as I showed in the photograph, with the exit wound being in the front of his face and small particulate pieces of bone and presumably blood and brain tissue being spattered on the inside of the car, on the right door.

Q.      As a result of your autopsy, did you find any other injuries on either Mr. Ramirez or Mr. Longoria that could have made that impact?

A.      Yes.

Q.      All right. As it would relate to the opinion regarding the tooth, that's also the same opinion, that to a reasonable degree of medical certainty, that that came from him?

A.      Yes.

Q.      Do you have an opinion in this instance as to whether or not, based on your examination of the vehicle and based on your examination of the bodies, that their deaths came about as the result of a gunfight or not?

A.      Well, I'd be careful about a gunfight. I think they were shot – well, there's no doubt they were shot. A gunfight might imply that they were firing weapons, and I don't know if they were or not. I don't have any injuries to suggest that.

Q.      Do you have injuries in evidence to suggest that this was not a mutually combative scenario.

A.      Well, I have, again an injury consistent with the defense wound on Mr. Ramirez; as I indicated a long time ago, the injury on the inside of his arm, which would indicate that his arm was in front of his body or at least raised up in front of him.

        The injury to the back of Mr. Longoria's head and the graze wound along his jaw would be inconsistent with offensive injuries.

        Even the gunshot wound that enters the right side of his arm and comes out the left upper back would seem inconsistent also. As I indicated I think earlier under direct exam, it seems inconsistent that if he's shot from the right, that hes offensively doing something to somebody or threatening someone.

Trial Trans. 4-B at pp. 211-13.[6]

_____

[6] The Court notes that Dr. Cohle is identified as "Dr. Chole" in Trial Trans. 4 and 4B.

On re-direct examination, the prosecutor clarified that the nature of Dr. Cohle's opinions were consistent with his expertise as a pathologist:

> Q.  Just one question, Doctor.  It was asked of you whether or not your opinion was based on what the police officers told you happened.  Is your opinion based on what they told you happened or is it based on your examination of the evidence, the injuries and the vehicle and everything else you did?
>
> A.  Well, they presented a hypothetical, could it have happened in a certain way.  And as I've testified, I felt that that was consistent and in some ways, the only thing I could say, at least one thing that occurs to me that I could say I believe from my own observations had to have occurred is, Mr. Longoria being shot in the back of the head, based upon his head injury being the only injury, of all those that would have produced small particulate amounts of bone being splattered in the car, because Mr. Ramirez's head injury would have caused larger pieces of bone, big triangular pieces of bone, not necessarily the size I'm showing you with my fingers, but maybe an inch, roughly, not tiny little pieces.  That's one thing I can say.
>
> But what I've tried to do in this case is to be asked a certain hypothetical, and is it possible from my observations whether that's consistent, and that's mainly what happened in this case.  I'm comfortable doing that.

*Id.* at pp. 259-60.  The record reflects that Dr. Cohle's testimony was supported by his medical qualifications.  Petitioner has not established a basis for his counsel to object to Dr. Cohle's testimony or that a challenge to the doctor's testimony would have been successful.

Finally, petitioner cited the Supreme Court's decision in *Daubert v. Merrell Dow Pharm, Inc.*, 509 U.S. 579 (1993), claiming that his counsel "failed to invoke the trial court's duty" to determine the expert witnesses' areas of professional competence to render opinions. The gist of petitioner's claim is that the trial judge allowed the government's experts to testify beyond the scope of their respective expertise.

Whether expert testimony is admissible is matter of state law regulated by the Michigan Rules of Evidence (MRE):

> Before a trial court may admit any expert testimony, the trial court is required by MRE 702 "to ensure that each aspect of an expert witness's proffered testimony — including the data underlying the expert's theories and the methodology by which the expert draws conclusions from that date — is reliable." *Gilbert v. DaimlerChrysler Corp.*, 470 Mich. 749, 779–783, 685 N.W.2d 391 (2004). "While the exercise of this gatekeeper role is within a court's discretion, a trial judge may neither 'abandon' this obligation nor 'perform the function inadequately.' " *Id.* at 780, 685 N.W.2d 391, quoting *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 158–159, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (Scalia, J., concurring)

*Chapin v. A & L Parts, Inc.*, 274 Mich. App. 122, 126, 732 N.W.2d 578 (2007). Here, the record reflects that the prosecution presented evidence to establish that Officer Lucey, Ms. Patchin and Dr. Cohle were qualified to testify as experts. *See* Trial Trans. 4 at pp. 7-9 (Lucey); Trial Trans. 4 at pp. 96-98 (Patchin); and Trial Trans. 4-B at pp. 155-60 (Dr. Cohle). Under these circumstances, petitioner's counsel had no basis to contest that these three witnesses were not experts under Michigan law.

      **f.**     **Trial counsel failed to object to pathologist's reconstruction of shooting with gruesome details and color photographs of autopsy and failed to object to pathologist's claim that petitioner had assassinated the victim.**

Petitioner has raised two instances of ineffective assistance of counsel in this claim. First, petitioner contends that his counsel should have challenged the autopsy photographs entered into evidence. Second, petitioner contends that his counsel should have objected to Dr. Cohle's testimony that Longori's wound in the back of the head was analogous to an assassination. The decision to object to any particular evidence is a matter of trial strategy. "As a general matter, it is not easy to prevail on claims of ineffective assistance based on failures to object at trial because

'the defendant must overcome the presumption that. . . the challenged action might be considered sound trial strategy.'" *Britt v. Howes*, 404 Fed. Appx. 954, 957(6th Cir. 2010).

> As a threshold matter, in a trial of any size, numerous potentially objectionable events occur. "[T]he Constitution does not insure that defense counsel will recognize and raise every conceivable constitutional claim." *Engle v. Isaac*, 456 U.S. 107, 134, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Moreover, experienced trial counsel learn that objections to each potentially objectionable event could actually act to their party's detriment. Learned counsel therefore use objections in a tactical manner. In light of this, any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial to a client that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice. *See Hodge v. Hurley*, 426 F.3d 368, 376 (6th Cir.2005) ("[C]ounsel's failure to object to any of the numerous improper statements in the prosecution's closing argument is well outside [professional norms].") (emphasis in original).

*Lundgren v. Mitchell*, 440 F.3d 754, 774-75 (6th Cir. 2006).

Petitioner has not established that counsel would have been successful in excluding the autopsy photographs. During his testimony, petitioner specifically challenged Dr. Cohle's conclusions regarding the wounds inflicted on the victims by maintaining: that he did not stab the other victim (Ramirez) in the face; that he did not crush Ramirez' head with a cinder block; and that he did not stomp on Ramirez' liver. *See* Trial Trans. 6-B at p. 264 and Trial Trans. IV at pp. 8-9, 121, 133, 136, 175-76. Given this testimony, and the dispute over the placement of the bodies in the car, the autopsy photographs were highly relevant to show the location and types of wounds inflicted on the victims. Furthermore, a challenge to the admission of a gruesome photograph does not present a question of constitutional magnitude. *See Cooey v. Coyle*, 289 F.3d 882, 893-94 (6th Cir. 2002), *citing Gerlaugh v. Stewart*, 129 F.3d 1027, 1032 (9th Cir. 1997) (holding that erroneous admission of gruesome photo of decedent did not raise "the spectre of fundamental fairness such as to violate federal due process of law"); *Kuntzel v. Black*, 774 F.2d 291, 292 (8th Cir.1985) (affirming

denial of habeas relief where trial court admitted "particularly gruesome" photographs of a murder victim's body and body parts from an autopsy because they were "relevant and probative" in showing the condition of the deceased, the location of the wound, and the defendant's intent).

Dr. Cohle's comment regarding an act of assassination arose during his testimony on how the shooter could have inflicted the type of wound which Longoria suffered. On direct examination, when asked how he would characterize the wound to Longoria as either "running away" or "turning away" from the shooter, Dr. Cohle stated:

> Well, here's what we can say without question from the autopsy. He's shot in the back of the head and his back is to the shooter. So I mean, I suppose hypothetically, without any other information, you could say, well, it's like he's assassinated, or he could be walking along and the shooter is behind him and aims and hits a perfect shot in the back of the head.

> But certainly if he sees the shooter coming at him, I expect that he might well try to escape, and a logical consequence when he's shot would be to be shot in the back of the head.

Trial Trans. 4-B at p. 205. Dr. Cohle's isolated comment appeared supported by the forensic evidence of the wound. While the use of the term "assassinate" certainly contradicted petitioner's claim of self-defense, it was nevertheless an accurate way to describe a bullet wound to the back of the head. Counsel's failure to object to the use of the term could have been a matter of sound trial strategy. Interrupting the doctor's testimony to object to the term "assassinate" could have drawn undue juror attention to the doctor's use of the term, and afforded Dr. Cohle an additional opportunity to discuss how Longoria was shot in the back of the head (a factual scenario which would not be consistent with petitioner's claim of self-defense). Accordingly, petitioner's claims should be denied.

### g. Cumulative errors by trial counsel deprived petitioner of a fair jury trial.

As discussed in §§ IV.C.3. a-f, *supra*, the Court has found that none of trial counsel's actions amounted to ineffective assistance of counsel. Where the individual claims of ineffectiveness alleged by petitioner are all essentially meritless, petitioner cannot show that the cumulative error of his counsel rendered counsel ineffective. *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Accordingly, petitioner's claim that cumulative error deprived him of a fair trial should be denied.

### D. Ineffective assistance of appellate counsel ("IAAC") (Issue VII)

Petitioner contends that his appellate counsel erred by failing to raise the individual claims of ineffective assistance of trial counsel. Appellate counsel enjoys a strong presumption that the alleged ineffective assistance falls within the wide range of reasonable professional assistance. *See Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003), *citing Strickland*. It is not necessary for appellate counsel to raise every non-frivolous claim on direct appeal. *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes,* 463 U.S. 745 (1983). On the contrary,

> Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.

*Jones*, 463 U.S. at 751-52. It is well-recognized that the effect of adding weak arguments to an appellate brief "will be to dilute the force of the stronger ones." *Id.* at 752, *quoting* R. Stern, *Appellate Practice in the United States* 266 (1981). "[I]f you cannot win on a few major points, the others are not likely to help, and to attempt to deal with a great many in the limited number of pages allowed for briefs will mean that none may receive adequate attention." *Id.* The strategic and tactical choices to determine which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir.1990).

To evaluate a claim of IAAC, the court assesses the strength of the claim appellate counsel failed to raise. *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir.2004). If there is a reasonable probability that petitioner would have prevailed on appeal had the claim been raised, then this court can consider whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel." *Id.* at 700.

Here, petitioner's claims of ineffective assistance of trial counsel were meritless. Appellate counsel cannot be ineffective for failing to raise meritless or futile arguments on appeal. *See Coley*, 706 F.3d at 752; *Sanders*, 165 F.3d at 253; *Ludwig*, 162 F.3d at 459; *Lilly*, 988 F.2d at 786. Accordingly, petitioner's claim of IAAC should be denied.

### E.     State court rulings on post-conviction motions (Issue VIII)

Finally, petitioner contends that the trial judge abused his discretion in denying petitioner various forms of post-conviction relief. Petitioner's Brief (docket no. 2-3); Order Denying defendant's motion to compel (Feb. 22, 2008) (docket no. 2-3). Specifically, the trial court denied petitioner's post-conviction motions to compel production of the testifying pathologist's reports and to preserve biological evidence for DNA testing. *Id.* These motions were brought after petitioner's direct appeal. *Id.* Alleged errors which occur in post-conviction, collateral proceedings in state court are not cognizable on federal habeas review. "[T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) ("the petitioner's challenge to the validity of the state court's conduct of his post-conviction litigation, with respect to the denial of the opportunity to present recantation evidence" was outside of the scope of federal habeas review). *See also, Kirby v. Dutton*, 794 F.2d 245, 245-48 (6th Cir. 1986) ("the writ is not the proper means by which prisoners should challenge errors or deficiencies in state post-conviction proceedings" where the

alleged errors "address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration").  Accordingly, petitioner's claim of error should be denied.

### V.     Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**.  Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated:  August 30, 2013                     /s/ Hugh W. Brenneman, Jr.
                                                    HUGH W. BRENNEMAN, JR.
                                                    United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).